| | |
|---|---|
| 1 | WILDMAN, HARROLD, ALLEN & DIXON LLP |
| 2 | Michael Dockterman (*pro hac vice application to be filed*) |
| | dockterman@wildman.com |
| 3 | 225 West Wacker Drive, Suite 2800 |
| 4 | Chicago, IL 60606-1229 |
| | Telephone:  (312) 201-2000 |
| 5 | Facsimile:   (312) 201-2555 |
| 6 | Dominique R. Shelton (SBN 157710) |
| | Clinton J. McCord (SBN 204749) |
| 7 | 9665 Wilshire Boulevard, Suite 200 |
| 8 | Los Angeles, CA  90212 |
| | Telephone:  (310) 860-8700 |
| 9 | Facsimile:   (310) 860-3800 |
| 10 | Attorneys for Plaintiff Starcom MediaVest |
| 11 | Group, Inc. d/b/a Spark Communications |

**FILED**
SEP 25 2009
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**SI**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

STARCOM MEDIAVEST GROUP,
INC. d/b/a SPARK
COMMUNICATIONS

        Plaintiff,

v.

BIZCN.COM d/b/a CNOBIN.COM,
ROOT ESOLUTIONS and
EVERYDNS.NET,

        Defendants.

CASE NO. **CV 09 4553**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER:**

(1) CONSUMER PROTECTION AGAINST COMPUTER SPYWARE ACT (Cal. Bus. and Prof. Code §§ 22947 *et seq.*);
(2) COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030);
(3) INTENTIONAL INTERFERENCE;
(4) LANHAM ACT (15 U.S.C. § 1114);
(5) UNFAIR COMPETION/FALSE DESIGNATION OF ORIGIN (17 U.SC. § 1125);
(6) UNFAIR COMPETION/FALSE ADVERTISING (17 U.SC. § 1125)
(7) ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT (ACPA) (15 U.S.C. § 1125);
(8) UNJUST ENRICHMENT;
(9) UNLWAFUL AND UNFAIR BUSINESS PRACTICES (Cal. Bus. and Prof. Code §§ 17200, 17525).

**[JURY TRIAL DEMANDED]**

**COMPLAINT**

Starcom MediaVest Group, Inc. d/b/a Spark Communications ("Spark") brings this action against Bizcn.com d/b/a Cnobin.com ("Bixcn"), root eSolutions d/b/a Root.lu ("Root"), and EveryDNS.net ("EveryDNS") (collectively "Defendants") and alleges as follows:

## INTRODUCTION

1. Spark brings this action to stop Defendants' actions in facilitating a known hacker's creation of an unauthorized and infringing web site located at http://spark-smg.com ("Knockoff Site") that copies the contents of Plaintiff's legitimate web site located at http://sparksmg.com ("Spark Site") in its entirety to perpetrate fraudulent schemes.

2. Defendants have each knowingly facilitated the deployment of malicious online advertisements, or "malvertisements," that promote deceptive web sites and software to unsuspecting internet users and Spark customers. Spark brings claims under the California Consumer Protection Against Computer Spyware Act (Cal. Bus & Prof. Code §§ 22947 *et seq.*); Computer Fraud And Abuse Act (18 U.S.C. § 1030); the Lanham Act (15 U.S.C. §§ 1114, 1125); Anti-Cybersquatting Consumer Protection Act (ACPA) (15 U.S.C. § 1125); California Business and Professions Code sections 17200 and 17525, as well as under California common law for unjust enrichment, intentional interference with contractual relationships and business expectancies. Spark seeks damages, disgorgement, and injunctive relief to remedy Defendants' unlawful conduct.

## JURISDICTION AND VENUE

3. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Computer Fraud And Abuse Act (18 U.S.C. § 1030); the California Consumer Protection Against Computer Spyware Act (Cal. Bus. and Prof. Code. §§ 22947 *et seq.*); Anti-Cybersquatting Consumer Protection Act (ACPA) (15 U.S.C. § 1125); and California law. Subject matter jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121 and 27 U.S.C. §§ 1331, 1338 and 1367.

4. This Court has personal jurisdiction over the Defendants, all of whom have conducted business activities in and directed to California and are primary participants in tortious acts in and directed to California.

5. Venue is proper in this judicial district under 28 U.S.C § 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims pled herein occurred in this district and one or more of the Defendants transacts business in Alameda County

## THE PARTIES

6. Plaintiff Starcom MediaVest Group, Inc. d/b/a Spark Communications ("Spark") is a Delaware corporation with its principal place of business in Chicago, Illinois.

7. Plaintiff is informed and believes that Defendant Bizcn.com d/b/a Cnobin.com ("Bizcn") is a domain registrar located in China, with offices in Emeryville, California.

8. Plaintiff is informed and believes that Defendant root eSolutions d/b/a Root.lu ("Root") is an internet service provide ("ISP") located in Luxembourg.

9. Plaintiff is informed and believes that Defendant EveryDNS.net ("EveryDNS") is a domain name service, located in San Francisco, California.

10. The actions and omissions alleged herein by Bizcn, Root, and EveryDNS (collectively, the "Defendants") were undertaken by each Defendant individually, were actions and omissions that each Defendant caused to occur, were actions and omissions that each Defendant authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions and omissions each Defendant assisted, participated in, or otherwise encouraged, and are actions for which each defendant is liable. Each Defendant aided and abetted the actions of the Defendants set forth below, in that each Defendant had knowledge of those actions and omissions, provided assistance and benefited from those actions and omissions, in whole or in part. Each of the Defendants was the agent of each of the

remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of other Defendants.

## BACKGROUND

**Spark is a Respected Media Agency That Has Spent Years Building its Brand**

11. Spark Communications was created in 1999 (as StarLink Worldwide) and is an agency dedicated to exploring new ways to create meaningful connections in the rapidly accelerating communications environment. Spark has dedicated 10 years to building its brand as a media agency that is uniquely configured for the speed and agility necessary to succeed in today's evolving media world. Spark is a part of one of the largest and most celebrated global brand communications and consumer contact organizations, with more than 110 offices in 67 countries worldwide.

12. Since its creation in 1999, Spark has become an industry leader and spent millions of dollars promoting its business and business reputation under its Spark Site. Spark customers and vendors rely on the integrity of the Spark Site and its activity in promoting their online activities. Spark exercises due diligence to maintain the security and integrity of the Spark Site as a critical component of its overall business operation.

**Malware and Malvertisements**

13. Malware is "short for *malicious software*, which is software designed to infiltrate a computer without the owner's informed consent. The expression is a general term used by computer professionals to mean a variety of forms of hostile, intrusive, or annoying software or program code." (http://en.wikipedia.org/wiki/Malware).

14. "Malvertisements" are online advertisements that are designed to deceive consumers, publishers, and online advertising service providers. Fraudulently designed to look like innocuous advertisements, malvertisements use

a variety of technology tricks to deliver malicious content to web site visitors. Malvertisements can be used to distribute Malware, among other things.

15. The imposters responsible for placing malvertisements with content providers (e.g., AOL), use a variety of techniques designed to conceal the deceptive nature of their malvertisements. These techniques include sophisticated technology-based methods, such as programming the malvertisement to appear completely innocuous when viewed on a computer belonging to an advertising company but to take malicious actions when viewed on a home computer. They also include traditional fraud, such as misrepresentations so as to bolster the credibility and authority of the person placing the malvertisement.

### Spark's Intellectual Property and Web Site

16. Spark owns the copyrights in the Spark Site and all materials contained on the Site including, without limitation, the text, layout, and programming code.

17. As a leader in digital media advertising, Spark has spent millions of dollars promoting its business and business reputation, with the Spark Site being a critical component of Spark's brand.  Spark customers and vendors rely on the integrity of the Spark Site and its activity in promoting their online activities. Spark exercises due diligence to maintain the security and integrity of the Spark Site as a critical component of its overall business operation.

18. On August 20, 2007, Spark filed an application for registration of its **SPARK COMMUNICATIONS** mark in the United States Patent and Trademark Office. On October 7, 2008, the **SPARK COMMUNICATIONS** mark was registered in the United States Patent and Trademark Office on the Principal Register under the Act of 1946, covering the use of the mark in association with for advertising agency services, namely, planning and purchasing media time for advertisements of others and promoting events of others ("Spark's Services"). A copy of the United States Word Mark Registration 3513742 (hereinafter

"**REGISTERED SPARK MARK**") is attached hereto as Exhibit "A." This registration is valid and subsisting.

19. Spark is also the beneficial owner of common law trademark rights in, and the goodwill associated with use of, the term "SPARK" in connection with Spark's Services. Collectively, the common law trademark and goodwill, and the **REGISTERED SPARK MARK** are hereinafter referred to as the "Spark Marks." The **SPARKS MARKS** have been extensively used and promoted throughout the United States and have come to represent an invaluable goodwill identifying Spark's Services.

## DEFENDANT'S UNLAWFUL CONDUCT

### Defendants Are Knowingly Facilitating The Distribution of Malware

20. Starcom recently learned of the infringing web site located at http://spark-smg.com ("Knockoff Site"). The Knockoff Site is an unauthorized copy of the Spark Site, complete with Spark's graphics and even some of Spark's internal links.

21. In addition, the domain on which the Knockoff Site is hosted consists primarily of the term "SPARK" (a **SPARK MARK**) and is essentially identical to the domain for the Spark Site (i.e., sparksmg.com), with the only difference being a dash between "spark" and "smg" (spark-smg.com) ("Knockoff Domain").

22. Defendants are facilitating the Knockoff Site and Knockoff Domain by acting as the domain registrar (Bizcn), the internet provider service ("ISP") ("Root"), and the domain service provider ("EveryDNS").

23. Defendants, each, are knowingly failing or refusing to shut down the Knockoff Site. Even they have been expressly informed that the hacker is using the Knockoff Site and Knockoff Domain to perpetrate at least two fraudulent schemes, both of which are harmful:

    a. First, with Defendants' assistance, the hacker, by impersonating Spark through the use of the Knockoff Domain, attempts to trick content providers

COMPLAINT

2004996v1      6

1  (*e.g.*, AOL) into placing ads on the content providers' web sites on behalf of
2  Spark's clients. The invoice from the content provider will eventually be sent to
3  Spark (which the hacker is impersonating).

4      b. Second, through Defendants' enabling conduct, the hackers insert
5  malicious web programming code into ads, which are viewed by multitudes of
6  consumers because of the wide distribution of the malicious code afforded by the
7  ad's placement on a high-traffic web site. After the malicious code executes on a
8  viewer's computer, it typically installs malware onto the viewer's computer whose
9  personal information is then compromised, aggregated and used by the hacker for
10 financial gain.

11    24.   Spark recently learned of the Knockoff Site when it became aware of
12 suspicious occurrences whereby the hacker attempted to involve AOL in a scheme
13 to place malware and infiltrate consumers' computers without their informed
14 consent. After following up with AOL and undertaking an immediate
15 investigation, Spark confirmed that the hacker was attempting to launch malware
16 attacks through the use of the Knockoff Site and Domain. Spark has learned that
17 the hacker has contacted at least three other content providers, including regular
18 Spark partners, in an ongoing scheme.

19    25.   Fortunately, AOL and other content providers have, so far, thwarted
20 the hacker's attempts to infiltrate their high-traffic sites. Had any of the attempts
21 succeeded, the hacker would simply have "flipped a switch" in connection with the
22 malware to cause it to begin downloading malware to every computer that visited
23 the content provider's page containing the malware.

24    26.   The manner in which the malware is activated is as follows: The
25 programming code embedded in the ad includes a reference to a third party web
26 server from which some of the information necessary to display the ad is
27 downloaded. When the hacker provides the ad to the content provider for
28 placement, the ad references and loads only innocuous content. After the content

provider begins displaying the ad on its web site, the hacker then launches his attack. He does so by changing the reference to the web server from which the ad content is loaded: instead of loading the innocuous content, the ad loads malicious content from that point forward. The technical means by which the web server reference is changed is the via the Internet "Domain Name System," the mechanism by which computers translate an Internet host name (e.g., google.com) to an IP address (74.125.45.100). Viewers exposed to the malicious code are subject to having malware installed on their computers, which the hacker would use compromise, aggregate and use for financial gain the viewer's personal information stored on the computer.

27. The Knockoff Site is under investigation by the United States Secret Service as potentially part of a larger fraud scheme.

28. Fortunately, the content providers have not yet placed any of the hacker's ads. Had any of them done so, the hacker would quickly have "flipped a switch" in connection with the ad to cause it to begin downloading malware to every computer that visited the content provider's page containing the ad. <u>Each day the Knockoff Site is allowed to continue, through the facilitation of the Defendants, increases the chances that the hacker will succeed in placing malware on consumers' computers.</u>

**The Knock Off Site Needs to Be Shut Down Immediately As it is Infringing Spark's Intellectual Property and Threatening Consumers**

29. As stated above, the Knockoff Site is an <u>exact, verbatim copy of the entire Spark Site</u> that has been copied by an unknown individual(s) without Spark's authorization. In fact, there does not appear to be any materials on the Knockoff Site that are *not* copied from the Spark Site.

30. Attached hereto as Exhibit "B" is a true and correct copy of the home page for the Spark Site. Exhibit "C" is a true and correct copy of the home page for the infringing Knockoff Site. A comparison of these and other corresponding

COMPLAINT

pages between the Spark Site and the Knockoff Site makes clear that wholesale copying has taken place. The infringing material on the Knockoff Site is so pervasive that it goes to the very heart of that site and cannot be separated from it. Accordingly, the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled is the entire Knockoff Site. Neither Spark nor its agents have authorized the party or parties responsible for the Knockoff Site, including its domain registrar Bizcn, to copy (or facilitate the copying of) the Spark Site or any portion of the Spark Site or to use any of the Spark Marks. Moreover, Spark's copyrighted and other proprietary materials displayed on the Knockoff Site are not authorized by the law.

31. The protection of consumers and of Spark's reputation in the industry requires that this Knockoff Site – which is actively being used by the hacker to falsely hold himself out as Spark – immediately be removed from the Internet. In this kind of "malware-via-advertising" attack, the advertisement provided by the hacker is viewed by multitudes of consumers, who are consequently exposed to malware and the compromise of their personal information.

32. "Malware-via-advertising" attacks have been in the news for some time. The telephone company Vonage was the subject of a highly publicized scheme in which phishers created a ghost website to obtain personal and financial information from Vonage customers as if they were sharing it with Vonage. Similarly, New York Times users were hit with an attack through a malicious ad that tried to trick users into downloading phony antivirus software. (http://securitywatch.eweek.com/malware/nytimescom_users_hit_by_malicious_ad.html). Technology website eWEEK.com was also victimized last year when code placed on certain advertisements on its site redirected users to a malicious website that attempted to plant malware through a vulnerability in Adobe Reader. (http://www.eweek.com/c/a/Security/Attackers-Infect-Ads-With-Old-Adobe-Vulnerability-Exploit/). In each of these situations, the hacker's goal was to obtain

COMPLAINT

and compromise consumer information through the use of hostile malware technology that took advantage of the hacker's use of ghost sites of legitimate companies, such as Spark.

33. Based on the WHOIS database information, Defendant Bizcn.com is the domain name registrar for the Knockoff Domain.

34. Based on the RIPE database information, Defendant root eSolutions d/b/a Root.lu ("Root") is the Internet service provider for the web server hosting the Knockoff Site that is located at the IP address 212.117.175.6.

35. Based on the WHOIS database information, Defendant EveryDNS.net ("EveryDNS") provides Domain Name Services ("DNS") for the Knockoff Domain.

36. Spark sent correspondence to each of these three entities demanding that they cease and desist taking any action that allows the site to be publicly available. Copies of the cease and desist letters are attached hereto as Exhibit "D."

37. All of these Defendants have failed or refused to comply. This is not surprising given that it is not the first time that one of them (*i.e.*, Bizcn) has been associated with unlawful malware activities. A quick perusal of the hits returned to a Google search on "bizn" + "hacker" substantiates the presumption that Bizcn appears to be extensively involved in Internet crime/fraud. (http://www.google.com/search?q=bizcn+hacker).

38. Accordingly, the only way to immediately bring the hacker activity to a halt is to compel the Defendants to stop assisting the hacker and take any action necessary to cut off access to the Knockoff Site.

**COMPLAINT**

2004996v1                    10

## COUNT I

**Violations of the California Consumer Protection Act Against Computer Spyware Act (Cal. Bus & Prof. Code §§ 22947 *et seq.*)**

39. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 38 above.

40. Defendants' activities in targeting the Spark Site and customers, through facilitating the Knockoff Site are violations of the Consumer Protection Act Against Computer Spyware Act, specifically, California Business and Professions Code sections 22947.2 through 22947.4..

41. As a result of Defendants' conduct, Spark has been damaged in an amount to be proven at trial.

42. Defendants' acts and omissions have affected the public interest, are unfair and deceptive acts or practices in trade or commerce and unfair methods of competition, and violated the California Consumer Protection Act Against Computer Spyware Act. Spark seeks an award of damages, statutory penalties and attorneys fees under the Act.

## COUNT II

**Violation of the Federal Computer Fraud and Abuse Act (18 U.S.C. §§1030(a)(2), (4) and (5))**

43. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 42 above.

44. Defendants knowingly, and with intent to defraud, facilitated the hacker's access to one or more protected computers without authorization or in excess of authorized access. By their actions, Defendants furthered the intended fraud and obtained something of value. Defendants also are facilitating the hacker's ability to obtain unauthorized use of the protected computers, and the value of that use exceeds more than $5,000 in any one-year period.

COMPLAINT

2004996v1     11

45. Defendants knowingly caused the transmission of a program, information, code, or command, thereby intentionally causing damage without authorization to a protected computer system.

46. Defendants intentionally accessed a protected computer system without authorization, thereby causing damage and loss.

47. Defendants intentionally accessed a protected computer system without authorization, or in excess of authorized access, and thereby obtained information from that computer system.

48. Defendants' conduct caused loss aggregating at least $5,000 in value to one or more persons during a one-year period.

49. Spark suffered damage or loss by reason of Defendants' conduct in violation of 18 U.S.C. § 1030.

50. Defendants' activity constitutes a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4), and Spark is entitled to damages under that Act. Spark is also entitled under the Act to injunctive and equitable relief against Defendants.

## COUNT III

### Intentional Interference with Contractual Relationships and Business Expectancies

51. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 50 above.

52. Spark has contractual relationships and business expectancies based upon the programs, services, applications, and software it provides to businesses and consumers.

53. Defendants knew of these contractual relationships and business expectancies as of at least September 24, 2009, when cease and desist letters were sent to each of them.

54. Defendants are facilitating the unlawful acts of the hacker with knowledge that these activities would interfere with Spark's existing and prospective contracts and business expectancies.

55. Defendants acted with improper purpose.

56. As a result of Defendants' actions, Spark has been damaged in an amount to be proven at trial.

## COUNT IV

### Trademark Infringement Lanham Act (15 U.S.C. §1114)

57. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 56 above.

58. Defendants' wrongfully facilitated the hacker's unauthorized use of the **SPARKS MARKS** and counterfeits of same to promote, market, or sell fraudulent products and services.

59. Defendant Root has engaged in direct trademark infringement by hosting the infringing Knockoff Site. Defendants' conduct constitutes direct, contributory and vicarious trademark infringement under to 15 U.S.C. § 1114.

60. Defendants' intentional and willful infringement of the **SPARK MARKS** has caused and will continue to cause damage to Spark, in an amount to be proven at trial, and is causing irreparable harm to Spark for which there is no adequate remedy at law.

61. Spark is entitled to recover damages and to recover its costs herein in an amount to be proven at trial. Spark is entitled to injunctive relief against Defendants.

62. Spark is further entitled to recovery of statutory damages, treble damages and attorney's fees.

## COUNT V

**Unfair Competition/False Designation of Origin/False Endorsement Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))**

63. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 62 above.

64. At all times pertinent to this Complaint, Spark has had the sole right throughout the world to use, publish and license others to use or publish the protected source-identifying material contained on the Spark Site and/or the **SPARK MARKS**. Defendants know that neither they, nor the hacker, have been granted any license, permission or authorization to use, reproduce, or imitate any of the **SPARK MARKS**, trade names or other source-identifying materials. Defendants have not been granted any rights to use or in any way exploit any of the material contained on the website.

65. Spark has not agreed to be affiliated with or endorsed the illegal Knockoff Site or Knockoff Domain.

66. Defendants have used and/or facilitated the hacker's use and continued use of the **SPARK MARKS** in connection with goods or services, in commerce, on the illegal Knockoff Site, in a manner that is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of such goods or services.

67. As a result of their wrongful conduct, Defendants are liable to Spark for violation of this provision of the Lanham Act.

## COUNT VI

**Unfair Competition/False Advertising Under The Lanham Act (15 U.S.C. § 1125(a))**

68. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 67 above.

69. Defendants have used and/or facilitated the hacker's use of the **SPARK MARKS** in connection with goods or services with false and misleading descriptions or representations of fact in commercial advertising or promotion, thereby misrepresenting the nature, characteristics, and qualities of their or another person's goods, services, or commercial activities.

70. As a result of their wrongful conduct, Defendants are liable to Spark for violation of this provision of the Lanham Act.

71. Spark is entitled to recover damages and to recover its costs herein in an amount to be proven at trial. Spark is also entitled to injunctive and other equitable equitable relief against Defendants.

## COUNT VII

**Anti-Cybersquatting Consumer Protection Act (ACPA) (15 U.S.C. 1125(d))**

72. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 71 above.

73. With a bad faith intent to profit from such actions, Defendants have used the Knockoff Domain http://spark-smg.com in connection with the Knockoff Site to facilitate the hacker's use of malvertisements and malware.

74. Spark has used its legitimate Spark Site for business for years.

75. Defendants intend to enable the hacker to divert consumers from the Spark Site to the Knockoff Site that is harming the goodwill represented by the Spark Site for commercial gain, with the intent to tarnish or disparage the SPARK MARK by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site. See Exhibit E.

76. Spark's investigation reveals that the hacker most probably provided misleading false and misleading contact information when applying for registration of the domain name with Bizcn.

77. Spark never gave permission to the hacker or Defendants to engage in this activity.

78. Accordingly, Spark is entitled to damages in an amount to be proven at trial and/or statutory damages, as permitted by law.

79. Spark is also entitled to an immediate injunction to cause forfeiture or cancellation of the Knockoff Domain, and/or to cause transfer of the Knockoff Domain name to Spark.

## COUNT VIII

### Unjust Enrichment

80. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 79 above.

81. The acts of Defendants complained of herein constitute unjust enrichment of the Defendants at Spark's expense in violation of the common law of California.

82. Spark has been damaged in an amount to be proven at trial.

## COUNT IX

### Unlawful and Unfair Business Practices
### (Cal. Bus. and Prof. Code § 17200)

83. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 82 above.

84. The acts of Defendants complained of herein constitute unlawful and unfair business practices in violation of California Business and Professions Code section 17200.

85. Spark has been damaged in an amount to be proven at trial.

86. In addition to an award of actual damages, Spark is entitled to a permanent injunction restraining Defendants' actions in facilitating the hacker's use of the Knockoff Site.

## COUNT X

**(Violation of California Business and Professions Code Section 17525)**

87. Spark realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 86 above.

88. The acts of Defendants complained of herein constitute unlawful conduct in violatoin of California Business and Professions Code section 17525(a).

89. Spark has been damaged in an amount to be proven at trial.

90. In addition to an award of actual damages and attorney's fees, Spark is entitled to transfer of the domain name of the Knockoff Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

1. For temporary and permanent injunctive relief against Defendants, and that Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assignees, and all others in active concert or participation with Defendants, be enjoined and restrained from:

a) continuing to violate the California Consumer Protection Act Against Computer Spyware Act;

b) continuing to violate the federal Computer Fraud and Abuse Act;

c) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs a) or b) above;

d) continuing to permit the operation of the Knockoff Site.

2. For an order causing forfeiture or cancellation of the Knockoff Domain, and/or to cause transfer of the Knockoff Domain name to Spark.

3. For actual damages, in an amount to be proven at trial;

4. For disgorgement of Defendants' ill-gotten profits;

5. For enhanced damages, in an amount to be proved at trial;

6. For punitive damages, in an amount to be proven at trial.

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury on all issues herein so triable.

DATED: September 25, 2009.

STARCOM MEDIAVEST GROUP
d/b/a SPARK COMMUNICATIONS

By: _____
WILDMAN, HARROLD, ALLEN &
DIXON LLP
Michael Dockterman
(dockterman@wildman.com)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229

Dominique R. Shelton
(dshelton@wildman.com)
9665 Wilshire Boulevard, Suite 200
Los Angeles, CA 90212
Telephone: (310) 860-8700
Facsimile.: (310) 860-3800

COMPLAINT