1 unknown individual(s) without Plaintiffs' authorization. In fact, there does not appear to be any materials on the Knockoff Sites that are *not* copied from the Plaintiffs' sites.

40. Attached hereto as Exhibit "B" are true and correct copies of the home page for the Spark Site and the Digitas Site. Exhibit "C" contains true and correct copy of the home page for the infringing Knockoff Site, and evidence that the Knockoff 2 site history has been intentionally erased from the archive.org site (known as the Internet Archive Wayback machine). A comparison of these and other corresponding pages between the legitimate Spark Site and Digitas Site, and the corresponding Knockoff Sites makes clear that wholesale copying has taken place. The infringing material on the Knockoff Sites is so pervasive that it goes to the very heart of those sites and cannot be separated from them. Accordingly, the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled is the entire Knockoff Site and Knockoff Site 2. Neither Plaintiffs nor their agents have authorized the party or parties responsible for the Knockoff Sites, including their domain registrar Bizcn, to copy (or facilitate the copying of) the Spark Site, the Digitas Site, or any portion of the Spark Site or Digitas Site, or to use any of the **SPARK MARKS** or the **DIGITAS MARKS**. Moreover, Plaintiffs' copyrighted and other proprietary materials displayed on the Knockoff Sites are not authorized by the law.

41. The protection of consumers and of the Plaintiffs' reputation in the industry requires that these Knockoff Sites – which were actively being used up until Friday September 25, 2009 (in the case of the Knockoff Site) and Saturday September 26, 2009 (in the case of the Knockoff Site 2) by a hacker to falsely hold himself out as affiliated with Plaintiffs – immediately be permanently removed from the Internet. In this kind of "malware-via-advertising" attack, the advertisement provided by the hacker is viewed by multitudes of consumers, who

**FIRST AMENDED COMPLAINT**

2005651v1                                   11

1 are consequently exposed to malware and the compromise of their personal information.

42. After the complaint was served on Friday September 25, 2009, the Sites have been intermittently shut down for portions of the past few days, only to reappear again. Accordingly, until the Knockoff Domains are definitively transferred to Spark and Digitas, respectively, there is no way to ensure that they will remain shut down and disabled to prevent future malware. For example, although the Knockoff Site was disabled briefly sometime on Saturday, September 26, 2009, as of 3:30 p.m. Pacific Time on September 28, 2009, it appears that certain aspects of the Kockoff Domain have been restored to service and are operational (specifically, the name server record has been restored to reference EveryDNS's DNS servers and the mail server record has been restored to reference Google's mail servers), thus enabling the hacker to continue to benefit from the Knockoff Domain).

43. "Malware-via-advertising" attacks have been in the news for some time. The telephone company Vonage was the subject of a highly publicized scheme in which phishers created a ghost website to obtain personal and financial information from Vonage customers as if they were sharing it with Vonage. Similarly, New York Times users were hit with an attack through a malicious ad that tried to trick users into downloading phony antivirus software. (http://securitywatch.eweek.com/malware/nytimescom_users_hit_by_malicious_ad.html). Technology website eWEEK.com was also victimized last year when code placed on certain advertisements on its site redirected users to a malicious website that attempted to plant malware through a vulnerability in Adobe Reader. (http://www.eweek.com/c/a/Security/Attackers-Infect-Ads-With-Old-Adobe-Vulnerability-Exploit/). In each of these situations, the hacker's goal was to obtain and compromise consumer information through the use of hostile malware

**FIRST AMENDED COMPLAINT**

2005651v1     12

technology that took advantage of the hacker's use of ghost sites of legitimate companies, such as Spark and Digitas.

44. Based on the WHOIS database information, Defendant Bizcn.com is the domain name registrar for the Knockoff Domains.

45. Based on the RIPE database information, Defendant root eSolutions d/b/a Root.lu ("Root") is the Internet service provider for the web server hosting (a) the Knockoff Site that is located at the IP address 212.117.175.6 (as of Friday September 25, 2009) and (b) the Knockoff Site 2 that is located at the IP address 212.117.175.211 (as of Saturday, September 26, 2009).

46. Based on the WHOIS database information, Defendant EveryDNS.net ("EveryDNS") provides Domain Name Services ("DNS") for the Knockoff Domain. EveryDNS has stated in writing to the United States Secret Service ("USSS") that it will not comply with Plaintiffs' demands or those of the USSS absent a court order.

47. Plaintiffs sent correspondence to each of these three entities demanding that they cease and desist taking any action that allows the site to be publicly available. Copies of the cease and desist letters are attached hereto as Exhibit "D."

48. While one or more of the Defendants disabled the Knockoff Sites as of Sunday September 27, 2009, (although, as noted above, partial access has been restored for the Knockoff Domain), all of the Defendants except Root eSolutions have failed to agree to the terms of the cease and desist letters.

49. In particular, Biczn has failed or refused to transfer the Knockoff Domains to Plaintiffs. This is not surprising given that it is not the first time that one of them (*i.e.*, Bizcn) has been associated with unlawful malware activities. A quick perusal of the hits returned to a Google search on "bizn" + "hacker" substantiates the presumption that Bizcn appears to be extensively involved in Internet crime/fraud. (http://www.google.com/search?q=bizcn+hacker). In

FIRST AMENDED COMPLAINT

2005651v1     13

addition, on September 28, 2009, Defendant EveryDNS informed Plaintiffs' counsel and the USSS that it would not comply with Plaintiffs' or the USSS' demands without a court order.

50. Accordingly, the only way to immediately bring the hacker activity to a halt is to compel the Defendants to stop assisting the hacker, take all action necessary to cut off access to the Knockoff Sites including the immediate transfer of the Knockoff Domains to Plaintiffs.

## COUNT I

### Violations of the California Consumer Protection Act Against Computer Spyware Act (Cal. Bus & Prof. Code §§ 22947 *et seq.*)

51. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 50 above.

52. Defendants' activities in targeting the Spark Site, Digitas Site and their customers, through facilitating the Knockoff Sites are violations of the Consumer Protection Act Against Computer Spyware Act, specifically, California Business and Professions Code sections 22947.2 through 22947.4.

53. As a result of Defendants' conduct, Plaintiffs have been damaged in an amount to be proven at trial.

54. Defendants' acts and omissions have affected the public interest, are unfair and deceptive acts or practices in trade or commerce and unfair methods of competition, and violated the California Consumer Protection Act Against Computer Spyware Act. Plaintiffs seek an award of damages, statutory penalties and attorneys fees under the Act.

## COUNT II

### Violation of the Federal Computer Fraud and Abuse Act (18 U.S.C. §§1030(a)(2), (4) and (5))

55. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 54 above.

FIRST AMENDED COMPLAINT

2005651v1

14

56. Defendants knowingly, and with intent to defraud, facilitated the hacker's access to one or more protected computers without authorization or in excess of authorized access. By their actions, Defendants furthered the intended fraud and obtained something of value. Defendants also are facilitating the hacker's ability to obtain unauthorized use of the protected computers, and the value of that use exceeds more than $5,000 in any one-year period.

57. Defendants knowingly caused the transmission of a program, information, code, or command, thereby intentionally causing damage without authorization to a protected computer system.

58. Defendants intentionally accessed a protected computer system without authorization, thereby causing damage and loss.

59. Defendants intentionally accessed a protected computer system without authorization, or in excess of authorized access, and thereby obtained information from that computer system.

60. Defendants' conduct caused loss aggregating at least $5,000 in value to one or more persons during a one-year period.

61. Plaintiffs suffered damage or loss by reason of Defendants' conduct in violation of 18 U.S.C. § 1030.

62. Defendants' activity constitutes a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4), and Plaintiffs are entitled to damages under that Act. Plaintiffs are also entitled under the Act to injunctive and equitable relief against Defendants.

## COUNT III

### Intentional Interference with Contractual Relationships and Business Expectancies

63. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 62 above.

64. Plaintiffs have contractual relationships and business expectancies based upon the programs, services, applications, and software it provides to businesses and consumers.

65. Defendants knew of these contractual relationships and business expectancies as of at least September 24, 2009, when cease and desist letters were sent to each of them regarding the Spark Site, and September 27, 2009 when cease and desist letters were sent to each of them regarding the Digitas Site.

66. Defendants are facilitating the unlawful acts of the hacker with knowledge that these activities would interfere with the Plaintiffs' existing and prospective contracts and business expectancies.

67. Defendants acted with improper purpose.

68. As a result of Defendants' actions, the Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

### Trademark Infringement Lanham Act (15 U.S.C. §1114)

69. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 68 above.

70. Defendants' wrongfully facilitated the hacker's unauthorized use of the **SPARKS MARKS**, and **DIGITAS MARKS** and counterfeits of same to promote, market, or sell fraudulent products and services.

71. Defendant Root has engaged in direct trademark infringement by hosting the infringing Knockoff Site, and the infringing Knockoff Site 2. Defendants' conduct constitutes direct, contributory and vicarious trademark infringement under to 15 U.S.C. § 1114.

72. Defendants' intentional and willful infringement of the **SPARK MARKS** and the **DIGITAS MARKS** has caused and will continue to cause damage to Plaintiffs, in an amount to be proven at trial, and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

73. Plaintiffs are entitled to recover damages and to recover its costs herein in an amount to be proven at trial. Plaintiffs are entitled to injunctive relief against Defendants.

74. Plaintiffs are further entitled to recovery of statutory damages, treble damages and attorney's fees.

## COUNT V

### Unfair Competition/False Designation of Origin/False Endorsement Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

75. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 74 above.

76. At all times pertinent to this Complaint, Spark has had the sole right throughout the world to use, publish and license others to use or publish the protected source-identifying material contained on the Spark Site and/or the **SPARK MARKS**. Defendants know that neither they, nor the hacker, have been granted any license, permission or authorization to use, reproduce, or imitate any of the **SPARK MARKS**, trade names or other source-identifying materials. Defendants have not been granted any rights to use or in any way exploit any of the material contained on the website.

77. Digitas has not agreed to be affiliated with or endorse the illegal Knockoff Site 2 or Knockoff Domain 2.

78. At all times pertinent to this Complaint, Digitas has had the sole right throughout the world to use, publish and license others to use or publish the protected source-identifying material contained on the Digtas Site and/or the **DIGITAS MARKS**. Defendants know that neither they, nor the hacker, have been granted any license, permission or authorization to use, reproduce, or imitate any of the **DIGITAS MARKS**, trade names or other source-identifying materials. Defendants have not been granted any rights to use or in any way exploit any of the material contained on the website.

**FIRST AMENDED COMPLAINT**

79. Digitas has not agreed to be affiliated with or endorse the illegal Knockoff Site 2 or Knockoff Domain 2.

80. Defendants have used and/or facilitated the hacker's use and continued use of the **SPARK MARKS** and the **DIGITAS MARKS** in connection with goods or services, in commerce, on the illegal Knockoff Sites, in a manner that is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of such goods or services, and which in fact *has* caused confusion.

81. As a result of their wrongful conduct, Defendants are liable to Plaintiffs for violation of this provision of the Lanham Act.

## COUNT VI

### Unfair Competition/False Advertising Under The Lanham Act (15 U.S.C. § 1125(a))

82. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 81 above.

83. Defendants have used and/or facilitated the hacker's use of the **SPARK MARKS** and the **DIGITAS MARKS** in connection with goods or services with false and misleading descriptions or representations of fact in commercial advertising or promotion, thereby misrepresenting the nature, characteristics, and qualities of their or another person's goods, services, or commercial activities.

84. As a result of their wrongful conduct, Defendants are liable to Plaintiffs for violation of this provision of the Lanham Act.

85. Plaintiffs are entitled to recover damages and to recover its costs herein in an amount to be proven at trial. Plaintiffs are also entitled to injunctive and other equitable equitable relief against Defendants.

///

## COUNT VII

**Anti-Cybersquatting Consumer Protection Act (ACPA) (15 U.S.C. 1125(d))**

86. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 85 above.

87. With a bad faith intent to profit from such actions, Defendants have used the Knockoff Domain http://spark-smg.com in connection with the Knockoff Site to facilitate the hacker's use of malvertisements and malware.

88. With a bad faith intent to profit from such actions, Defendants have used the Knockoff Domain 2 http://digitas-usa.com in connection with the Knockoff Site 2 to facilitate the hacker's use of malvertisements and malware.

89. Spark has used its legitimate Spark Site for business for years. Similarly, Digitas has used its legitimate Digitas Site for business for years.

90. Defendants intend to enable the hacker to divert consumers from the Spark Site to the Knockoff Site, and the Digitas Site to the Knockoff Site 2 that is harming the goodwill represented by the Spark Site and Digitas Site for commercial gain, with the intent to tarnish or disparage the **SPARK MARK** and **DIGITAS MARK** by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site. *See* Exhibit E (describing Defendants' involvement in other unsavory schemes designed to harm legitimate businesses and their customers).

91. Plaintiffs' investigation reveals that the hacker most probably provided misleading false and misleading contact information when applying for registration of the domain name with Bizcn.

92. Defendants were informed that Plaintiffs never gave permission to the hacker or Defendants to engage in this activity.

93. Accordingly, Plaintiffs are entitled to damages in an amount to be proven at trial and/or statutory damages, as permitted by law.

94. Plaintiffs are also entitled to an immediate injunction to cause forfeiture or cancellation of the Knockoff Domains, and/or to cause transfer of the Knockoff Domains to Plaintiffs.

## COUNT VIII

### Unjust Enrichment

95. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 94 above.

96. The acts of Defendants complained of herein constitute unjust enrichment of the Defendants at Plaintiffs' expense in violation of the common law of California.

97. Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IX

### Unlawful and Unfair Business Practices
### (Cal. Bus. and Prof. Code § 17200)

98. Plaintiffs reallege and incorporate by this reference each and every allegation set forth in paragraphs 1 through 97 above.

99. The acts of Defendants complained of herein constitute unlawful and unfair business practices in violation of California Business and Professions Code section 17200.

100. Plaintiffs are entitled to restitution from Defendants based upon Defendants' ill-gotten gains, and attorney fees in an amount to be proven at trial.

101. In addition to restitution and attorney's fees, Plaintiffs are entitled to transfer of the Knockoff Domains.

## COUNT X

### Unlawful Registration of Domain Name

### (Cal. Bus. and Prof. Code § 17525)

102. Plaintiffs reallege and incorporate by this reference each and every

allegation set forth in paragraphs 1 through 101 above.

103. The acts of Defendants complained of herein constitute unlawful conduct in violation of California Business and Professions Code section 17525.

104. Plaintiffs are entitled to restitution from Defendants based upon their ill-gotten gains, and attorney fees in an amount to be proven at trial.

105. In addition to restitution and attorney's fees, Plaintiffs are entitled to transfer of the Knockoff Domains.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

1. For temporary and permanent injunctive relief against Defendants, and that Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assignees, and all others in active concert or participation with Defendants, be enjoined and restrained from:

   a) continuing to violate the California Consumer Protection Act Against Computer Spyware Act;

   b) continuing to violate the federal Computer Fraud and Abuse Act;

   c) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs a) or b) above;

   d) continuing to permit the operation of the Knockoff Site.

2. For an order causing forfeiture or cancellation of the Knockoff Domain.

3. For an order causing transfer of the Knockoff Domain to Spark, and the Knockoff Domain 2 to Digitas.

4. For actual damages, in an amount to be proven at trial;

5. For restitution and disgorgement of Defendants' ill-gotten profits;

6. For enhanced damages, in an amount to be proved at trial;

7. For punitive damages, in an amount to be proven at trial;

8. For attorneys fees; and for

9. Such further relief as the Court may deem just and proper.

DATED: September 29, 2009.

STARCOM MEDIAVEST GROUP
d/b/a SPARK COMMUNICATIONS

By:   /s/ Dominique R. Shelton
WILDMAN, HARROLD, ALLEN &
DIXON LLP
Michael Dockterman
(dockterman@wildman.com)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229

Dominique R. Shelton
(dshelton@wildman.com)
9665 Wilshire Boulevard, Suite 200
Los Angeles, CA 90212

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury on all issues herein so triable.

DATED: September 29, 2009.

STARCOM MEDIAVEST GROUP
d/b/a SPARK COMMUNICATIONS

By:   /s/ Dominique R. Shelton
WILDMAN, HARROLD, ALLEN &
DIXON LLP
Michael Dockterman
(dockterman@wildman.com)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229

Dominique R. Shelton
(dshelton@wildman.com)
9665 Wilshire Boulevard, Suite 200
Los Angeles, CA 90212

**FIRST AMENDED COMPLAINT**